**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| RUSSELL CLAY DAWES, Jr., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-11-3250 |
| | § | |
| IMPERIAL SUGAR COMPANY, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

This is a putative class action securities lawsuit filed by stockholders against Imperial Sugar Company and several of its executives. The lead plaintiff, Carpenters Pension Fund of Illinois, has moved to strike Exhibit M to the defendants' motion to dismiss.[1] Exhibit M is an excerpt from *Sugar: A User's Guide to Sucrose*. The excerpt states that "[p]ackages of white granulated sugar products range from packs containing one-tenth of an ounce up to bulk rail cars of 200,000 pounds." (Docket Entry No. 42, Ex. M (SUGAR: A USER'S GUIDE TO SUCROSE (Neil L. Pennington & Charles Baker, eds. 1990))). The defendants argue that the bulk-rail-car load figure is relevant to determining the quantity of sugar that the lead plaintiff alleges Imperial purchased from CSC, one of Imperial's competitors, in order to meet customer orders during the relevant period. (Docket Entry No. 40, ¶ 51). The lead plaintiff contends that this court should decline to take judicial notice of the 200,000 pound figure in Exhibit M because the source is not clearly reliable. In support, the

---

[1] The lead plaintiff also moved to strike several other exhibits attached to the defendants' motion to dismiss. The court previously resolved the rest of this motion in its October 9, 2012 hearing.

lead plaintiff notes that the source was published in 1990 and does not have the characteristics of objectivity and general acceptance that a dictionary, almanac, or treatise has.

Courts routinely take notice of basic facts, figures, and methods of calculation in sources such as treatises and almanacs.  *United States v. Henry*, 417 F.3d 493, 494 (5th Cir. 2005); *see also* FED. R. EVID. 201 (courts can take judicial notice of facts that "can accurately and readily be determined from sources who accuracy cannot reasonably be questioned.").  In addressing the treatise exception to the hearsay rule, the Second Circuit stated:

> Learned treatises are considered trustworthy because "they are written primarily for professionals and are subject to scrutiny and exposure for inaccuracy, with the reputation of the writer at stake." Fed. R. Evid. 803(18) advisory committee note.  Failure, therefore, to lay a foundation as to the authoritative nature of a treatise requires its exclusion from evidence because the court has no basis on which to view it as trustworthy.

*Schneider v. Revici*, 817 F.2d 987, 991 (2d Cir. 1987); *see also Baker v. Barnhart*, 457 F.3d 882, 891 (8th Cir. 2006) ("The district court did not identify, and we cannot discern, any indication that the Soderberg article qualifies as a treatise of an authoritative nature.").

The defendants have not laid an adequate foundation for this court to find that *Sugar: A User's Guide to Sucrose* is a learned treatise.  The defendants have not provided information about the expertise of the editors or authors, including whether this expertise extends to the amount of sugar shipped in a railcar.  Additionally, the defendants have not shown that the relevant shipping technology did not change during the roughly two decades between the source's publication in 1990 and the events that form the basis of this lawsuit.

The defendants have also not shown that the source supports their contention that the railcars used to ship sugar from CSC to Imperial contained at most 200,000 pounds of sugar.  *See* STEPHEN

A. SALTZBURG, MICHAEL M. MARTIN, & DANIEL J. CAPRA, FEDERAL RULES OF EVIDENCE MANUAL (10th Ed.) § 201.02[10] (stating that judicial notice may be inappropriate when it "would be only marginally probative" (citing *Wooden v. Missouri P.R. Co.*, 862 F.2d 560 (5th Cir. 1989))).  The source's use of the phrase "up to bulk rail cars of 200,000 pounds" does not necessarily mean that all railcars or even the typical railcar used to ship sugar during the relevant period had a capacity of 200,000 pounds.  (Docket Entry No. 42, Ex. M).  Nor does it define the term "bulk rail car."  The source does not exclude the possibility that Imperial used larger rail cars to ship its sugar.  The source's reference to bulk rail cars holding 200,000 pounds of sugar also appears, from context, not to provide a technical estimate of the maximum capacity of railcars used to ship sugar but to be an example of the range of "forms and packages" that "commercially distributed sugar products are available in."  (*Id.*).

The lead plaintiff's motion to strike Exhibit M to the defendants' motion to dismiss is granted.

SIGNED on March 30, 2013, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

3